UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| JUXTACOMM-TEXAS SOFTWARE, LLC,<br><br>                              Plaintiff,<br><br>v.<br><br>LANIER PARKING SYSTEMS OF VIRGINIA, INC. *et al.*,<br><br>                              Defendants. | Civil Action No. 3:11-CV-299 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Stay Case Pending Reexamination filed by Defendant Lanier Parking Systems of Virginia, Inc. ("Lanier"). (ECF No. 39). Defendants Dominion Tower Financial Associates LLC, First Tower Associates LLC, First States Investors 3500 LLC, James Center Property LLC, and Hines Riverfront Plaza, LP, have joined the motion, (ECF Nos. 55, 57, 65, 71), which Plaintiff JuxtaComm-Texas Software, LLC, opposes. The Court held a hearing on this matter on July 20, 2011. For the reasons discussed below, the Court has granted the motion.

### I. BACKGROUND

Plaintiff JuxtaComm is the exclusive licensee of U.S. Patent No. 6,195,662 ("the '662 Patent"). The patent was issued in February 2001 and has 19 claims. This is the third lawsuit JuxtaComm has filed seeking to enforce the '662 patent. The Plaintiff initiated the first lawsuit, *JuxtaComm I*, in August 2007 in the Eastern District of Texas. The twenty-one *JuxtaComm I* defendants included the Microsoft Corporation and IBM. Six months before

1

trial, Microsoft initiated an *ex parte* reexamination proceeding before the United States Patent and Trademark Office (PTO). The PTO issued an Office Action confirming the patentability of all but one of the claims of the '662 Patent.

The Plaintiff initiated the second lawsuit, *JuxtaComm II*, in January 2010, again in the Eastern District of Texas. The defendants in this action were additional software vendors. Tenth months after JuxtaComm initiated the lawsuit, two of the defendants filed an *ex parte* request for reexamination questioning the patentability of the '662 Patent. This second reexamination relied on allegedly prior new art (DBMS Copy Plus), alone and in combination with another system (DAISy) that was rejected as publicly accessible prior art in the first reexamination. On May 12, 2011, the PTO issued a Final Office Action invalidating Claims 1-11 and 14-19 of the '662 Patent.[1] JuxtaComm then requested that the examiner reconsider certain evidence. She agreed to do so and on June 7 withdrew her final rejection of the claims as obvious over the combination of DBMS Copy Plus and DAISy; however, she left intact the rejection of the claims as anticipated by DBMS Copy Plus. JuxtaComm will file a request for reconsideration and appeal the decision, if necessary.

JuxtaComm filed the Complaint in this lawsuit on May 6, 2011, and began serving the Defendants on May 13. Defendant Lanier, joined by five other Defendants, has requested that the Court stay this litigation pending reexamination.

## II. <u>LEGAL STANDARD</u>

---

[1] Of the 19 claims in the '662 Patent, 17 were at issue in the reexamination. Of the two not at issue, one was canceled (Claim 13) and the other (Claim 12) was not asserted in *JuxtaComm I* or *II* and is dependent on three other claims (Claims 1, 10, and 11), all of which the PTO rejected.

A court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "It is well-settled law that a district court may exercise its discretion when ruling on a motion to stay proceedings pending reexamination of the patents-in-suit by the PTO." *NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005). Courts deciding motions to stay patent litigation pending reexamination consider "(1) whether discovery is complete and a trial date is scheduled; (2) whether a stay would simplify the matters at issue; and (3) whether a stay would unduly prejudice or clearly disadvantage the non-moving party." *ePlus, Inc. v. Lawson Software*, No. 3:09-CV-620, 2010 WL 1279092, at *2 (E.D. Va. Mar. 31, 2010).

### III. DISCUSSION

#### A. Discovery and Trial Date

This litigation is in its early stages. Discovery has not yet begun and the Court has not yet established a case schedule, *Markman* hearing date, or trial date. Thus, the parties have expended relatively small amounts of time and resources at this point. The Defendant is not entitled to a stay simply because the litigation is its early stages, however. Rather, the proper inquiry considers "the stage of the litigation in comparison to the stage of the PTO reexaminations." *MercExchange, L.L.C. v. eBay Inc.*, 500 F. Supp. 2d 556, 565 (E.D. Va. 2007). That inquiry favors staying the litigation.

The posture of this case is somewhat distinct from other cases where courts have denied motions to stay pending reexamination. In many of those cases, a party filed a

motion to stay in the latter stages of litigation or initiated a reexamination during the pendency of the litigation. *E.g., Osmose, Inc. v. Arch Chems., Inc.*, No. 2:10-CV-108 (E.D. Va. Jan. 28, 2011) (denying stay after *Markman* hearing and three months prior to trial); *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, No. 3: 09-CV-791, 2010 WL 1946262, at *5 (E.D. Va. May 10, 2010) (denying stay where request for reexamination was filed three months after litigation commenced and "discovery [was] well underway"); *ePlus, Inc.*, 2010 WL 1279092, at *2 (E.D. Va. Mar. 31, 2010) (denying stay requested two months prior to close of discovery period and six months prior to trial); *NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d at 787-88 (denying stay on remand where a jury found infringement but the PTO had not issued first office actions against all patents at issue). In contrast, defendants in other JuxtaComm litigation initiated reexamination prior to this litigation. Furthermore, JuxtaComm began serving the Defendants with the Complaint in this lawsuit *after* the PTO's Final Office Action.

Comparing the early stage of litigation with the advanced stage of reexamination favors granting the Defendant's motion to stay.

### B. Simplifying the Matters at Issue

Lanier argues that a stay would simplify the matters at issue in this litigation by determining whether JuxtaComm can assert the claims against the Defendants. JuxtaComm contends that reexamination is a slower and less focused process than the district court procedure for determining validity and that the PTO's expertise is not needed to proceed with this litigation.

"It is little more than a tautology to state that reexamination will simplify the matters at issue ... because the Patent Office's expertise as provided during reexamination will always inform the underlying issues that the Court would consider after the reexamination process was complete." *Sunbeam Products*, 2010 WL 1946262, at *3. Nonetheless, simplification would be a benefit in this matter because as it currently stands, the PTO has deemed virtually all of the claims of the '662 Patent invalid. If litigation were to proceed under this "cloud of invalidity," the scope and validity of the claims at issue will likely be in constant flux. Given the PTO's Final Office Action, it appears likely that reexamination will significantly simplify the underlying issues.

### C. **Prejudice to JuxtaComm**

JuxtaComm has alleged numerous sources of prejudice, including the length of time it will take to complete the reexamination and appeals process, the loss of discovery information, the potential unavailability of the named inventors and an expert witness, and negative effects on its licensing program. None of these alleged sources of prejudice favors denying the motion to stay.

First, although JuxtaComm's estimate that the reexamination and appeals process may take an additional forty-five months is reasonable, it does not necessarily favor denying the requested stay. Doing so would permit JuxtaComm to race to the finish line in litigation it pursued after learning that the PTO had rejected virtually all its claims. Additionally, as Lanier notes, the Defendants do not make software and are not in the software business. Therefore, the relevant discovery information they possess is limited—namely the identities of software vendors and the number of cars that park in a given garage. They can easily maintain that information during a stay. Next, JuxtaComm's

arguments concerning the availability of the named investors and its expert witness are speculative at best. If, however, the expert witness becomes unwilling or unable to participate in this litigation, JuxtaComm can rely on a different expert witness. Finally, any harms that JuxtaComm experiences during the pendency of a stay, including harms to its licensing program, are recoverable through monetary damages. *See NTP, Inc. v. T-Mobile, USA, Inc.*, No. 3:07-CV-548, 2007 WL 3254796, at *3 (E.D.Va. Nov. 2, 2007) (finding a stay would not harm the plaintiff where monetary damages are available for infringement during the pendency of the stay). Thus, a stay would not prejudice JuxtaComm.

## IV. **CONCLUSION**

Considering the advanced stage of reexamination juxtaposed with the early stage of litigation, the likelihood that the outcome of reexamination will greatly simplify the issues in this case, and the lack of prejudice to JuxtaComm, the Court finds that the Defendant's request for a stay is not a dilatory litigation tactic but a reasonable request to prevent this litigation from proceeding under a "cloud of invalidity." Accordingly, the Court GRANTS the Defendant's motion to stay.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order has issued.

```
                    /s/
_____
James R. Spencer
Chief United States District Judge
```

ENTERED this __1st__ day of _August_ 2011.