UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



MAY - 6 2013

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

JUXTACOMM-TEXAS SOFTWARE, LLC,

                                    Plaintiff,

        v.                                              Civil Action No. 3:11-CV-299

LANIER PARKING SYSTEMS OF VIRGINIA,
INC. *et al.*,

                                    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Lift Stay for Limited Purpose of Granting Leave to File Amended Answer and Entering Judgment Based on Collateral Estoppel filed by Defendant Lanier Parking Systems of Virginia, Inc. ("Lanier")(ECF No. 85). The remaining Defendants have either adopted Lanier's Motion (ECF Nos. 87, 90, 91) or separately filed motions raising identical issues (ECF Nos. 88, 89)(collectively, "Defendants' Motions"). On April 16, 2013, the Court lifted the stay and granted Defendants leave to amend their Answers. Defendants have all filed their respective amended Answers, and the Court now considers Defendants' Motions for a judgment on the pleadings, or alternatively, summary judgment. Plaintiff JuxtaComm-Texas Software, LLC ("JuxtaComm") opposes Defendants' Motions. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials presently before the Court, and argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons discussed below, the Court GRANTS Defendants' Motion for Judgment on the Pleadings.

## I.   BACKGROUND

JuxtaComm is the exclusive licensee of U.S. Patent No. 6,195,662 ("the '662 Patent"), a system that transforms data from one computer system into another format for use by a different computer system. The patent was issued in February 2001 and has 19 claims. On September 14, 2010, JuxtaComm wrote Defendant Lanier offering to license the '662 Patent to Lanier. Lanier rejected the offer, and JuxtaComm filed this lawsuit on May 6, 2011.

The present suit is the third lawsuit JuxtaComm has filed seeking to enforce the '662 Patent. JuxtaComm initiated the first lawsuit, *Juxtacomm Technologies, Inc. v. Ascential Software Corporation (JuxtaComm I)*, No. 2:07cv359-LED (E.D. Tex.) in August 2007 in the Eastern District of Texas. Six months before the *JuxtaComm I* trial, defendant Microsoft Corporation initiated an *ex parte* reexamination proceeding before the Patent and Trademark Office (PTO). The PTO issued an official Office Action on May 5, 2009 confirming the patentability of all but Claim 13 of the '662 Patent.

JuxtaComm initiated the second lawsuit, *JuxtaComm-Texas Software, LLC v. Axway, Inc. et al (JuxtaComm II)*, No. 6:10cv011 (E.D. Tex.), in January 2010 against additional software vendors. Two of the defendants in this lawsuit, also in the Eastern District of Texas, filed an *ex parte* request for reexamination questioning the patentability of the '662 Patent. This second reexamination relied on allegedly new prior art (DBMS Copy Plus), alone and in combination with another system (The DAISY System) that was rejected in the first reexamination. On May 12, 2011, the PTO issued a Final Office Action invalidating Claims 1-11 and 14-19 of the '662 Patent.[1] Upon JuxtaComm's request, the examiner reconsidered certain evidence, and on June 7, 2011, withdrew her final rejection of the

---

[1] Claims 12 and 13 were not at issue because Claim 12 was not asserted in *JuxtaComm I* or *II* and Claim 13 was canceled. Claim 12 is dependent on the rejected Claims 1, 10, and 11.

claims as obvious over the combination of DBMS Copy Plus and the DAISY System; however, she left intact the rejection of the claims as anticipated by DBMS Copy Plus.

JuxtaComm filed its Complaint in this case, *JuxtaComm III*, on May 6, 2011. JuxtaComm represented its intention to appeal the June 2011 decision, and accordingly, six of the Defendants moved to stay this litigation pending reexamination (ECF Nos. 39, 55, 57, 65, 71). The Court granted the Motion to Stay on July 21, 2011, and directed JuxtaComm to file status reports regarding the reexamination every 120 days. On February 22, 2013, JuxtaComm filed a status report advising the Court of a final and unappealable ruling by the Board of Patent Appeals and Interferences ("BPAI") reversing the examiner and finding that Claims 1-11 and 14-19 should not have been rejected as anticipated. (*See* Pl.'s Interim Reexamination Status Report ECF No. 84, Ex. 1.) JuxtaComm also informed the Court that the U.S. District Court for the Eastern District of Texas (hereinafter *"JuxtaComm II* Court") granted summary judgment to the defendants in *JuxtaComm II* and issued final judgment on September 19, 2012. (*See JuxtaComm II*, July 5, 2012 Order, ECF No. 1079.) JuxtaComm represents that its appeal of this judgment is pending, with briefing before the U.S. Court of Appeals for the Federal Circuit to be completed by May 13, 2013.

On March 8, 2013, Defendants filed the present Motions asking that (1) the Court lift the stay for the limited purpose of allowing Defendants to amend their Answers, and (2) the Court enter a judgment on the pleadings, or in the alternative, grant summary judgment based on collateral estoppel from the *JuxtaComm II* judgment. By Order on April 16, 2013, the Court lifted the stay and granted Defendants leave to amend their Answers. Each of the Defendants has timely filed its amended Answer asserting the doctrine of collateral

estoppel as an affirmative defense.[2] Thus, the Court now considers whether Defendants are entitled to judgment on the pleadings, or alternatively, summary judgment on the ground of collateral estoppel. This matter has been fully briefed and is ripe for review.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed if the motion is made early enough to not delay trial. Motions for judgment on the pleadings are evaluated under the same standard as a motion to dismiss under Rule 12(b)(6), thus the purpose is to test the sufficiency of the complaint. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir.2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999). Judgment should be entered for the movant when the pleadings fail to state any cognizable claim for relief, and thus, the issue can be decided as a matter of law. *O'Ryan v. Dehler Mfg. Co.*, 99 F.Supp.2d 714, 718 (E.D. Va. 2000)(citing *Zeran v. America Online, Inc.*, 129 F.3d 327, 329 (4th Cir. 1997)).The Court views the alleged facts in the light most favorable to the non-moving party, *see Edwards*, 178 F.3d at 248, and the complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Under Rule 8(a)(2), these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545; *see id.* at 555 n.3. The Court may consider "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, so long as the authenticity of these

---

[2] In addition, Defendants Dominion Tower Financial Associations LLC ("Dominion"), First Tower Associates LP ("First Tower"), and Hines Riverfront Plaza, LA ("Hines") have counterclaimed against JuxtaComm seeking declaratory relief regarding the validity and enforceability of the '662 Patent.

documents is not disputed." *Witthohn v. Federal Ins. Co.*, 164 F. App'x 395, 396 (4th Cir.2006). However, if matters outside the pleadings are presented to the Court and not excluded, the motion must be treated as one for summary judgment. Fed.R.Civ.P. 12(d).

Pursuant to Rule 56, a motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)(holding that the moving party bears the burden of establishing the nonexistence of a triable issue of fact). A court must look to the specific facts pled to determine whether a triable issue exists, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1996), and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *id.* at 248. All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)(internal quotation marks and citations omitted). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Thus, summary judgment may be granted if the nonmoving party's evidence is only colorable or is not significantly probative, *Anderson*, 477 at 249–50. However, the motion must be denied if there is a genuine issue of material fact. 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 2011).

## III.   DISCUSSION

Defendants argue that JuxtaComm's Complaint asserting patent infringement fails as a matter of law under the doctrine of collateral estoppel in light of the ruling in *JuxtaComm*

*II.* The Eastern District of Texas held in *JuxtaComm II* that the independent Claims 1 and 17 are invalid for indefiniteness, and therefore, Defendants argue that all of the remaining dependent claims fail as well. Defendants cite *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971) for the proposition that "once the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles of collateral estoppel." (Lanier's Mem. Supp. 3-4, ECF No. 86)(quoting *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994)). Defendants argue that JuxtaComm cannot defeat the preclusive effect of the judgment because JuxtaComm had a full and fair chance to litigate the validity of the '662 Patent before the *JuxtaComm II* Court. Accordingly, Defendants contend that since the Eastern District of Texas has issued a final judgment invalidating JuxtaComm's claims, with the accounting of costs payable as the only remaining issue, JuxtaComm is prohibited from relitigating the validity of these claims before this Court. Further, Defendants contend that the pendency of JuxtaComm's appeal to the Federal Circuit is immaterial to the finality of the *JuxtaComm II* judgment.

In response, JuxtaComm argues that collateral estoppel does not apply because it was not afforded a full and fair opportunity to litigate the issue of invalidity in *JuxtaComm II*. Firstly, JuxtaComm asserts that the court's briefing order required the defendants to raise any arguments of indefiniteness along with their claim construction briefs so that both matters would be considered concurrently during the scheduled *Markman* hearing; instead, JuxtaComm argues that no defendant raised the issue of indefiniteness until many months after the claim construction disputes were submitted to the court and the court issued its *Markman* order. Accordingly, JuxtaComm argues that the *JuxtaComm II* Court's

6

"consideration of the indefiniteness issue was procedurally imbalanced in favor of the Texas Defendants." (Pl.'s Opp. Memo 6.) Secondly, JuxtaComm argues that the *JuxtaComm II* Court "applied an improper legal standard and failed to grasp the technical disclosure of the patent." (*Id.* at 6.) Thirdly, JuxtaComm argues that the *JuxtaComm II* Court failed to consider crucial evidence related to the invalidity determination because it did not consider JuxtaComm's expert declaration asserting that the court's interpretation of the claim language was faulty. JuxtaComm contends that these defects deprived it of a full and fair opportunity "procedurally, substantively, and evidentially to defend against the invalidity arguments," and therefore, that collateral estoppel cannot be applied. (*Id.* at 7.) JuxtaComm further asserts that the application of collateral estoppel would be inequitable because there is a substantial likelihood that the ruling in *JuxtaComm II* will be reversed and because there are two conflicting prior adjudications of patent validity.

The doctrine of collateral estoppel precludes a party from relitigating an issue that has already been decided in another case when: "(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision of the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum." *Sedlack v. Braswell Servs. Group,* 134 F.3d 219, 224 (4th Cir. 1998)(internal quotations omitted); *see Ramsay v. INS,* 14 F.3d 206, 210 (4th Cir. 1994). In patent infringement cases, once the claims of a patent are held invalid in a suit against one alleged infringer, an unrelated party who is sued for infringing

the same claims may "reap the benefit of the invalidity decision under principles of collateral estoppel." *Mendenhall*, 26 F.3d at 1577; *see Blonder-Tongue*, 402 U.S. 313.

"If an alleged infringer raises the defense of collateral estoppel, the burden is on the patentee to demonstrate, if he can, that he did not have a fair opportunity procedurally, substantively and evidentially to pursue his claim the first time." *Miss. Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1376 (Fed. Cir. 1983)(internal quotations and citations omitted). The Court's "inquiry into whether the plaintiff was afforded a full and fair opportunity to litigate is quite narrow and does not involve a judgment on the merits," *Pharmacia & Upjohn Co. v. Myland Pharms., Inc.*, 170 F.3d 1373, 1380 (Fed. Cir. 1999). Accordingly, the Court considering whether collateral estoppel applies may not inquire as to whether the prior judgment of invalidity is correct, *see id.*, and "the only inquiry open to the district judge is whether the patentee had a full and fair opportunity to litigate the validity of the patent in the prior case in which it was held invalid." *Miss. Chem. Corp.*, 717 F.2d at 1379. "Unless the district judge finds that the patentee did not have that opportunity, the judge must treat the prior determination of invalidity as estopping the patentee from relitigating that question." *Id.*

In determining whether the plaintiff alleging patent infringement had a full and fair opportunity to litigate the validity of the patent, the factors to be considered include:

> (1) whether the patentee was the plaintiff in the prior suit and chose to litigate at that time and place; (2) whether the patentee was prepared to litigate and to litigate to the finish against the defendant there involved; (3) if the issue is obviousness, whether the first validity determination purported to employ the standards announced in *Graham v. John Deere Co.* . . . ; (4) whether the prior case was one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit; and (5) whether without fault of his own the patentee was deprived of crucial evidence or witnesses in the first litigation.

*Stevenson v. Sears, Roebuck & Co.,* 713 F.2d 705, 709 (Fed. Cir. 1983)(citing *Blonder-Tongue,* 402 U.S. at 332-33). This list is not exhaustive, and "[d]etermining whether a patentee has had a full and fair chance to litigate the validity of his patent in an earlier case is of necessity not a simple matter," *Blonder-Tongue,* 402 U.S. at 333.

In this case, the parties contest only whether JuxtaComm was given a full and fair opportunity to litigate, and since JuxtaComm has not sufficiently demonstrated that it was denied this opportunity, the judgment finding JuxtaComm's claims invalid for indefiniteness must be given preclusive effect in this Court. Firstly, JuxtaComm was also the plaintiff in *JuxtaComm II,* and there is no suggestion that it was not prepared to fully litigate. On the contrary, JuxtaComm settled its dispute with three of the original *JuxtaComm II* parties at a court-ordered mediation session, amended its infringement contentions, and then requested a trial to proceed against the remaining defendants. (*See JuxtaComm II* Mar. 27, 2012 Order, ECF No. 1047.) When the defendants requested a stay or a delayed trial date, JuxtaComm objected to postponing the trial, arguing that the matter was "nearly ready for trial." (*JuxtaComm II* Aug. 23, 2011 Pl.'s Resp. Def.'s Renewed Mot. Stay at 3, ECF No. 651.)

Further, JuxtaComm's argument that it was denied a full and fair opportunity to litigate due to the timing of the invalidity challenge is unpersuasive. JuxtaComm argues that the court committed a procedural error by considering the challenge despite the fact that the defendants did not raise this issue contemporaneously with the claim construction briefings as required by the court's scheduling order and regular practices. However, the *JuxtaComm II* Court chose not to deny defendants' motion as untimely, and JuxtaComm has not cited any specific rules or procedures violated by the court's departure from its normal

practice of considering indefiniteness contemporaneously with claim construction. The court acknowledged that the invalidity issue should have been raised at the *Markman* hearing (*JuxtaComm II* Mar. 27, 2012 Order at 2, ECF No. 1047), but in ordering further briefing, also noted that the defendants did cursorily address the invalidity issue in a prior motion for summary judgment (*see JuxtaComm II* July 5, 2012 Order at 2, ECF No. 1079.) Regardless of whether the prior motion for summary judgment sufficiently raised the challenge for indefiniteness, it is beyond dispute that the court ultimately allowed both parties to submit briefs on the issue of invalidity and also heard oral argument.

Secondly, JuxtaComm has not demonstrated that this case is "one of those relatively rare instances where the courts wholly failed to grasp the technical subject matter and the issues in suit." *Stevenson*, 713 F.2d at 709. JuxtaComm first claims that the *JuxtaComm II* Court applied the incorrect legal standard because the court was required to "examine the patent and determine what the inventors regard as their invention." (Pl.'s Opp. Memo 6.) This argument fails because, in resolving the motion for summary judgment, the court expressly set out the requirements of 35 U.S.C. ¶ 112 as the applicable law: "first, [the claim] must set forth what the applicant regards as his invention, and second, it must do so with sufficient particularity and distinctness, *i.e.*, the claim must be sufficiently definite." (*JuxtaComm II* July 5, 2012 Order at 6, ECF No. 1079.) Accordingly, it is clear that the court understood and applied the correct legal standard, and "proper articulation of the law by the court is a factor supporting a conclusion that the patentee had a full and fair opportunity to litigate." *Pharmacia*, 170 F.3d at 1380 (internal citations omitted).

JuxtaComm further argues that the *JuxtaComm II* Court "misunderstood the technical disclosure of the patent, and only realized on summary judgment that the claims

parallel the specification's disclosure that the systems interface is used for creating the scripts that control data transformation." (Pl.'s Opp. Memo 7.) At issue between the parties in *JuxtaComm II* was whether the claim language requires data transformation to actually occur within the systems interface or whether the claim language means that *control* of data transformation can be accomplished by the definition of scripts using the systems interface. Although the *JuxtaComm II* Court ultimately disagreed with JuxtaComm's reading of the claim language, the court did explain that the specification of the '662 Patent discloses that "the systems interface defines the scripts that control data transformation within the distribution system." (*JuxtaComm II* July 5, 2012 Order at 9, ECF No. 1079.) This explanation of the '662 Patent specification is consistent with JuxtaComm's own description of the specification (*see* Pl.'s Opp. Memo 7). Aside from its disagreement with the result reached, JuxtaComm has not provided any specific basis upon which this Court could conclude that the *JuxtaComm II* Court failed to grasp the technical subject matter and issues, and "[l]osing one's case is not evidence that the [fact finder] failed to understand the invention," *Pharmacia*, 170 F.3d at 1380.

Finally, JuxtaComm has not shown that it was deprived of crucial evidence or witnesses. JuxtaComm argues in a conclusory manner that the *JuxtaComm II* Court "flatly ignored" an expert declaration proffered by JuxtaComm which challenged the court's interpretation of the claim language. (Pl.'s Opp. Memo 7.) However, JuxtaComm offers no support for its suggestion that the lack of a reference to this declaration in the court's opinion means that this evidence was 'flatly ignored,' and further, JuxtaComm does not explain why this evidence was crucial other than to note that the expert expressed disagreement with the court's ultimate conclusion. Importantly, even if there is some basis

for disagreeing with the court's determination, "such disagreement is not enough to establish that . . . [the plaintiff] did not have a full and fair opportunity to litigate the validity of its patent." *Miss. Chem. Corp.*, 717 F.2d at 1377(finding that a plaintiff's expert affidavit asserting that the prior court failed to grasp the technical subject matter and issues reflected only a disagreement with the court's analysis and evaluation of the evidence).

In sum, it is clear that JuxtaComm was a plaintiff in *JuxtaComm II*, prepared and eager to litigate, and that JuxtaComm was given the opportunity to submit briefs and present oral argument on the issue of whether its claims on the '662 Patent were invalid for indefiniteness. JuxtaComm has not offered sufficient support for its arguments that the court failed to grasp the technical subject matter or issues or that it was deprived of crucial evidence. For these reasons, JuxtaComm's argument that the collateral estoppel defense does not apply because it was denied a full and fair opportunity to litigate is unavailing.

Similarly, JuxtaComm's arguments that the equities weigh against the application of collateral estoppel because of the risk that the *JuxtaComm II* judgment will be reversed and because of the prior judgments of validity are also unsuccessful. It must first be noted that if a patentee plaintiff was *not* denied a full and fair opportunity to litigate the validity of the patent in the prior case where it was held invalid, the district court "cannot permit relitigation because of equitable considerations." *Miss. Chem. Corp.*, 717 F.2d at 1379. "Although the Supreme Court in *Blonder-Tongue* referred to the trial courts' sense of justice and equity . . . , the only discretion left to the district court's sense of equity and justice by *Blonder-Tongue* is in the determination of whether the plaintiff had a full and fair opportunity to litigate in the prior suit finding invalidity." *Id.* (internal quotations and citations omitted). For the reasons discussed above, JuxtaComm had a full and fair

opportunity to litigate in *JuxtaComm II*, and accordingly, the Court must treat this prior judgment as estopping JuxtaComm from relitigating the validity of its claims in this Court.

Furthermore, despite JuxtaComm's argument that there is a substantial risk that the *JuxtaComm II* judgment will be reversed, the pendency of the appeal does not undermine the finality of the *JuxtaComm II* judgment. *See Warwick Corp. v. Maryland Dep't of Transp.*, 573 F.Supp. 1011, 1014 (D. Md. 1983)("The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal)(internal citations omitted), *aff'd without opinion*, 735 F.2d 1359 (4th Cir. May 16, 1984); *Pharmacia*, 170 F.3d at 1381 (citing *Warwick*).

Moreover, the existence of prior determinations that the '662 Patent is valid does not permit this Court to disregard the preclusive effect of the *JuxtaComm II* judgment. It is first worth noting that the recent BPAI ruling that JuxtaComm's claims should not have been rejected as anticipated does not appear to undermine the *JuxtaComm II* Court's ruling that the claims were invalid for indefiniteness since a patent may be found invalid as anticipated, obvious, or indefinite. *See* 35 U.S.C. §§ 102, 103, 112. Even if there *were* conflicting prior judgments, however, "under *Blonder-Tongue*, where there have been inconsistent prior determinations of validity, *the only permissible inquiry for the district court is whether the patentee had a full and fair opportunity to litigate the validity of his patent in the prior unsuccessful suit* . . . the existence of a prior inconsistent decision on validity of the patent should serve only as a red flag warning to the court to apply the full and fair criteria more carefully." *Miss. Chem. Corp.*, 717 F.2d at 1378 (internal quotations and citations omitted)(emphasis added). *See Stevenson*, 713 F.2d at 709-10. In accordance with *Blonder-Tongue*, the Court has carefully considered whether JuxtaComm was given a

full and fair opportunity to litigate the validity of the '662 Patent before the Eastern District of Texas, and finding this to be the case, the fact that JuxtaComm prevailed in prior reexaminations does not render collateral estoppel inapplicable.

For the above reasons, JuxtaComm has not sufficiently shown that it did not receive a full and fair opportunity to litigate before the *JuxtaComm II* Court, and therefore, the doctrine of collateral estoppel applies. Since JuxtaComm's Complaint consists entirely of an assertion of the validity of JuxtaComm's claims on the '662 Patent, the effect of collateral estoppel in this case is that JuxtaComm has not stated any cognizable claim for relief. Accordingly, the Court GRANTS Defendants' Motions for judgment on the pleadings.

## IV.   CONCLUSION

For the above reasons, the Court GRANTS Defendants' Motions for Judgment on the Pleadings.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

ENTERED this _____ 6th _____ day of May 2013.

_____/s/_____
James R. Spencer
United States District Judge

14